***Public Citizen, et al. v. Vantage Data Centers Management Company, LLC, et al.***
**No. 5:26-cv-06032-JKP-ESC**

**Plaintiffs Public Citizen and Sierra Club's Mot. to Compel Rule 26(f) Conference**

**Exhibit G**
**Plaintiffs' First Requests for Production to the Vantage Defendants (Nov. 5, 2026)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PUBLIC CITIZEN and SIERRA CLUB, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | No. 5:26-cv-6032-JKP-ESC |
| v. | § | |
| | § | |
| VANTAGE DATA CENTERS MANAGEMENT COMPANY, LLC, VANTAGE DATA CENTERS TX11, LLC, VANTAGE DATA CENTERS TX21, LLC, and VOLTAGRID LLC, | § § § § § | |
| Defendants. | | |

**PLAINTIFFS' FIRST REQUESTS FOR PRODUCTION TO DEFENDANTS VANTAGE DATA CENTERS MANAGEMENT COMPANY, LLC, VANTAGE DATA CENTERS TX11, LLC, AND VANTAGE DATA CENTERS TX21, LLC**

TO: Defendant Vantage Data Centers Management Company, LLC;
Defendant Vantage Data Centers TX11, LLC; and
Defendant Vantage Data Centers TX21, LLC,
each by and through its counsel of record, Vinson & Elkins LLP.

Under Federal Rules of Civil Procedure 26(d)(2) and 34 and Local Rule CV-26, Plaintiffs Public Citizen and Sierra Club deliver the following requests for production to Defendants Vantage Data Centers Management Company, LLC, Vantage Data Centers TX11, LLC, and Vantage Data Centers TX21, LLC. These requests are considered served at the parties' first Rule 26(f) conference. Fed. R. Civ. P. 26(d)(2)(B). Each Vantage Defendant must serve a written response, and any objections, within 30 days after service and must substantially complete its production of the requested documents within 45 days after service, as stated in the Instructions below.

**DEFINITIONS**

The definitions and rules of construction in Local Rule CV-26(b), including the definitions of "communication," "document," "identify," "parties," "person," and "concerning," are

incorporated into these requests. The following additional terms, which are specific to this action, have the meanings stated below. Each is intended to identify the subject of a request precisely, not to broaden it.

1. "**Vantage Defendants**," "**You**," and "**Your**" mean defendants Vantage Data Centers Management Company, LLC ("**Management Company**"), Vantage Data Centers TX11, LLC ("**TX11**"), and Vantage Data Centers TX21, LLC ("**TX21**"), and, consistent with Local Rule CV-26(b)(5), their officers, directors, managers, employees, agents, parents, subsidiaries, and affiliates. These terms do not call for privileged communications between You and Your counsel, which are addressed in the privilege-log instruction below.

2. "**VoltaGrid**" means defendant VoltaGrid LLC and its parents, subsidiaries, and affiliates, including any entity that owns or operates either VoltaGrid Plant.

3. "**TX12**" means Vantage Data Centers TX12, LLC; "TX22" means Vantage Data Centers TX22, LLC. Where the context refers to a building, "TX11," "TX12," "TX13," "TX21," and "TX22" mean the data-center buildings known by those names.

4. "**Vantage Entity**" means any Vantage Defendant, and any entity that controls, is controlled by, or is under common ownership with a Vantage Defendant and has an ownership, development, procurement, financing, or operating role at either Campus, including TX12; TX22; Vantage Data Centers Procurement Company, LLC; Vantage Data Centers Finance Company, LLC; Retained Vantage Data Centers Development, LLC; Retained Vantage Data Centers, LP; Retained Vantage Data Centers Assets, LP; and Retained Vantage Data Centers Management, LP. The phrase "under common ownership" describes corporate affiliation only; it is not a characterization of "common control" under the Clean Air Act.

5. “**Omicron Campus**” means the real property at 14720 Omicron Drive, San Antonio, Texas 78245, owned by TX11 (formerly Vantage Data Centers TX1, LLC), including Bexar County Appraisal District Property ID Nos. 1433662, 1433663, and 1433664 (CB 4349A, Block 130, Lots 1–3); the data-center buildings known as TX11, TX12, and TX13; the site of SAT-1; and any other land, whoever owns it, on which any engine, turbine, or generator serving those buildings is or was located.

6. “**Rogers Road Campus**” means the real property at 5207 Rogers Road, San Antonio, Texas 78251, owned by TX21 (formerly Vantage Data Centers TX2, LLC), including Bexar County Appraisal District Property ID No. 1433747 (NCB 17642, Block 46, Lot 3); the data-center buildings known as TX21 and TX22; the site of SAT-2; and any other land, whoever owns it, on which any engine, turbine, or generator serving those buildings is or was located.

7. “**Campus**” means the Omicron Campus or the Rogers Road Campus, and “Campuses” means both.

8. “**SAT-1**” means the electric generating facility registered by VoltaGrid under TCEQ Air Quality Standard Permit Registration No. 177637 (Regulated Entity No. RN112050760).

9. “**SAT-2**” means the electric generating facility registered by VoltaGrid under TCEQ Air Quality Standard Permit Registration No. 181707 (Regulated Entity No. RN112293980).

10. “**VoltaGrid Plant**” means SAT-1 or SAT-2.

11. “**Engines**” means the natural gas-fired engines (including INNIO Jenbacher J620 and J624 engines) installed at, or registered for, SAT-1 or SAT-2, under whatever authorization, other than any Trailer-Mounted Unit.

12. “**Black-Start Engines**” means the diesel-fired engines used, or intended to be used, to start or restore the Engines or a VoltaGrid Plant when no other source of power is available, including the two 2,012-brake-horsepower diesel-fired black-start emergency engines described in the June 24, 2026 revision to Registration No. 177637, any comparable engines serving SAT-2, and their fuel tanks, under whatever authorization (including any permit by rule under 30 Tex. Admin. Code § 106.511 or § 106.512 and any requirement of 40 C.F.R. part 60, subpart IIII, or 40 C.F.R. part 63, subpart ZZZZ).

13. “**Generators**” means the diesel-fired generators at either Campus registered under TCEQ Permit by Rule Registration No. 175523 (Omicron Campus) or No. 175524 (Rogers Road Campus), including those added by any revision of either registration.

14. “**Trailer-Mounted Unit**” means any engine, turbine, or generator set that was operated at either Campus while (a) it remained on a trailer, truck, chassis, or other wheeled frame, or (b) its exhaust was not routed through an emission point or stack identified in a TCEQ Registration for SAT-1 or SAT-2, whether or not it is the same make or model as the Engines (including an INNIO Jenbacher J620 or J624 engine), but not including the Black-Start Engines or the Generators.

15. “**Emission Unit**” means each Generator, Engine, Black-Start Engine, and Trailer-Mounted Unit.

16. “**Emission Controls**” means each add-on device that reduces emissions from an Emission Unit, such as a selective catalytic reduction system, oxidation catalyst, three-way catalyst, ammonia-slip catalyst, or particulate filter, stated by type, manufacturer, and model.

17. “**Emission Guarantees**” means each emission rate for a Regulated Pollutant that the manufacturer of an Emission Unit or of its Emission Controls guaranteed, warranted,

certified, or stated as a not-to-exceed value, together with the load points and conditions to which it applies.

18. "**Installation Dates**" means the dates on which an Emission Unit was delivered to a Campus, installed there, and first operated there, and, if applicable, the date on which it was removed from the Campus, and the dates on which each of its Emission Controls was installed and first placed in service.

19. "**Operating History**" means, for each date on which an Emission Unit operated, the start and end times of each period of operation, the hours operated that date, and the reason for each period of operation (for example, maintenance or readiness testing, commissioning or load-bank testing, loss of utility or VoltaGrid power, or supplying electrical load).

20. "**Specification Documents**" means, for an Emission Unit or for Emission Controls, the manufacturer's data sheets and specification sheets, any EPA certificate of conformity, documents sufficient to show its Emission Guarantees, and, for Emission Controls, their design specifications and guaranteed control efficiency.

21. "**Operating Records**" means hour-meter readings; engine-controller, SCADA, data-historian, and event logs; run logs; and other records sufficient to show an Emission Unit's Operating History, produced in native format where kept electronically.

22. "**Monitoring Documents**" means documents sufficient to show each operating or emission parameter monitored for an Emission Unit or its Emission Controls and how it is measured and recorded, such as monitoring plans, operation and maintenance plans, SCADA or data-historian tag lists, and alarm-setpoint lists.

23. "**Monitoring Data**" means the values recorded for each operating or emission parameter monitored for an Emission Unit or its Emission Controls (for example, run status, load,

electrical output, fuel use, exhaust or catalyst temperature, reagent-injection rate, differential pressure, and NOx, CO, VOC, or oxygen concentrations or emission rates), at the frequency at which they are recorded, whether by a CEMS, PEMS, portable analyzer, engine controller, SCADA system, data historian, or otherwise. Monitoring Data must be produced (a) in native format; (b) unless the native format is a delimited text file or Excel workbook, also exported to a comma-delimited (CSV) file or Excel workbook that can be opened in standard database or spreadsheet software; and (c) with a data dictionary or other documents sufficient to allow Plaintiffs to use and interpret the data as You do, identifying for each field or tag the parameter and Emission Unit to which it relates, its units of measure, any scaling or conversion factor, the time zone and timestamp convention, and the meaning of each status, quality, or error code.

24. "**Power Agreement**" means any agreement, contract, statement of work, schedule, appendix, exhibit, change order, amendment, side letter, term sheet, letter of intent, memorandum of understanding, or guarantee between any Vantage Entity and VoltaGrid concerning (a) the supply of electricity or electric generating capacity to either Campus, (b) VoltaGrid's use or occupancy of land at either Campus, or (c) the operation or maintenance of any Emission Unit at either Campus. The term includes the "strategic agreement" described in the February 11, 2025 announcement of the partnership between Vantage Data Centers and VoltaGrid, and the contract described in TCEQ Investigation Report No. 2122581.

25. "**TCEQ Registrations**" means TCEQ Permit by Rule Registration No. 175523 (as submitted on or about February 29, 2024 and as revised in 2025); Permit by Rule Registration No. 175524 (as submitted on or about February 28, 2024 and as revised on or

about June 27, 2025); Standard Permit Registration No. 177637 (as submitted on or about September 20, 2024, approved on or about October 10, 2024, revised on or about June 24, 2026, and approved as revised on or about July 24, 2026); Standard Permit Registration No. 181707 (as submitted on or about September 30, 2025 and approved on or about November 3, 2025); any other registration, permit by rule, or authorization for any Engine, Generator, or Trailer-Mounted Unit; and the applications for Federal Operating Permits O4790 and O4791. "TCEQ Registration" means any one of them.

26. "**TCEQ Submission**" means each registration, application, revision, clarification, notice, response to a TCEQ request, and other document submitted to TCEQ for or in support of a TCEQ authorization, as submitted and with all attachments.

27. "**TCEQ**" means the Texas Commission on Environmental Quality, including its Air Permits Division and its Region 13 (San Antonio) office.

28. "**EPA**" means the United States Environmental Protection Agency.

29. "**Ramboll**" means Ramboll Americas Engineering Solutions, Inc., and its employees and agents.

30. "**NOx**" means nitrogen oxides.

31. "**VOC**" means volatile organic compounds.

32. "**CO**" means carbon monoxide.

33. "**HAP**" means hazardous air pollutant.

34. "**Regulated Pollutants**" means NOx, CO, VOC, particulate matter (PM10 and PM2.5), sulfur dioxide (SO2), and each HAP listed under 42 U.S.C. § 7412(b) (including formaldehyde, acetaldehyde, acrolein, and methanol).

35. “**CEMS**” means a continuous emissions monitoring system, and “**PEMS**” means a predictive emissions monitoring system.

36. “**Bates number**” means the unique production number marked on each page of a document produced in this action (or, for a native file, assigned to it).

37. “**Identify**” has the meaning given in Local Rule CV-26(b)(3)–(4), supplemented as follows: (a) when referring to a document, “identify” also means to state its Bates number; (b) when referring to an entity, it means to state its full legal name, the state of its organization, its principal place of business, and its relationship to You; (c) when referring to an oral communication, it means to state its date, the participants, the means of communication (for example, meeting, telephone call, or video conference), and its substance; and (d) when referring to an Emission Unit, it means to state its manufacturer and complete model designation (the full model number, including any version, type, or suffix designation, for example the complete INNIO Jenbacher designation rather than “J620” or “J624”); its serial number and model year; its rated capacity (in kilowatts and brake horsepower) and fuel; its owner and operator; the manufacturer’s specifications for it; and, if it is EPA-certified, its engine family name.

38. “**Relevant Period**” means, unless a request states a different period, January 1, 2022 through the date of Your response.

The following rules of construction also apply:

(a) “Including” means including without limitation.

(b) “Any,” “each,” and “all” each mean any, each, and all; “and” and “or” are to be read both conjunctively and disjunctively, so as to bring within the scope of a request all information that might otherwise be construed to be outside its scope.

(c) The singular includes the plural and the plural includes the singular; the use of any tense of a verb includes all other tenses.

(d) Any term not defined here has the meaning given to it by the Clean Air Act and the regulations implementing it (including 40 C.F.R. parts 51, 52, 60, and 63), by the Texas Clean Air Act and the TCEQ rules (including 30 Tex. Admin. Code chapters 101, 106, 116, and 122) and the Texas State Implementation Plan, or by the Federal Rules of Civil Procedure, as the context requires.

## INSTRUCTIONS

1. **Time to respond.** You must serve Your written response, and any objections, within 30 days after service of these requests. Fed. R. Civ. P. 34(b)(2)(A).

2. **Form of response.** For each request, state that inspection and production will be permitted as requested or state with specificity the grounds for objecting, including the reasons. State whether any responsive materials are being withheld on the basis of an objection. If You object to part of a request, specify the part and produce documents responsive to the rest. Fed. R. Civ. P. 34(b)(2)(B)–(C).

3. **Joint response.** The Vantage Defendants may serve a single joint written response and production, provided that the response states specifically any respect in which it differs for any Vantage Defendant.

4. **Time of production.** Produce the documents on a rolling basis beginning no later than the date Your written response is due, and substantially complete Your production within 45 days after service of these requests. Your written response must state that date or, if You contend production cannot be substantially completed by then, the reasonable date by which it will be. Fed. R. Civ. P. 29(b), 34(b)(2)(B).

5. **Possession, custody, or control.** Produce all responsive documents in Your possession, custody, or control, including documents You have the legal right or practical ability to obtain from Your officers, employees, agents, parents, subsidiaries, and affiliates, and from consultants (including Ramboll), contractors, and attorneys acting for You. Fed. R. Civ. P. 34(a)(1).

6. **Form of production.** Produce electronically stored information in the form required by any ESI protocol entered in this action. Until one is entered, produce documents as searchable images or PDFs with load files and reasonably available metadata, and produce spreadsheets (including emission-calculation workbooks, with their formulas intact), databases, and engine-controller, SCADA, data-historian, and similar data in native format. Fed. R. Civ. P. 34(b)(1)(C), (b)(2)(E). This instruction, and any form of production stated in a definition, may be modified by any ESI agreement of the parties or any case management order or protective order entered in this action.

7. **Organization and Bates numbers.** Produce documents as they are kept in the usual course of business, or organize and label them to correspond to the requests, and mark each page (or, for a native file, the file) with a unique Bates number. Identify in Your response, by Bates range, the documents produced in response to each request. Fed. R. Civ. P. 34(b)(2)(E)(i).

8. **Documents sufficient to show.** A request for documents "sufficient to show" a fact may be satisfied by producing documents that reliably show that fact, without producing every document that refers to it. If You can show the requested information most efficiently through a summary or report generated from Your records, You may produce that summary, provided You also make the underlying records available on request.

9. **Documents already produced.** You need not produce again a document already produced in this action if Your response identifies it by Bates number.

10. **Objections.** State any objection with specificity. General or boilerplate objections, and objections incorporated by reference into every response, are not stated with specificity. Fed. R. Civ. P. 34(b)(2)(B)–(C).

11. **Privilege log.** If You withhold any document or information on a claim of attorney-client privilege, work product, or any other privilege or protection, expressly make the claim and describe the nature of the documents withheld as required by Fed. R. Civ. P. 26(b)(5)(A). Serve a privilege log within 14 days after serving Your written response or, for documents withheld from a later production, within 14 days after that production that, for each document or communication withheld, states (a) its date; (b) its author and each recipient, with their employers and titles; (c) its type; (d) its general subject matter; (e) the privilege or protection claimed and its basis; and (f) the request to which it is responsive. This instruction may be modified by any ESI agreement of the parties or any case management order or protective order entered in this action.

12. **Relevant Period.** Unless a request states a different period, each request covers the Relevant Period.

13. **Ambiguity.** If You consider any term or request ambiguous, state the construction You used in responding to it and respond under that construction.

14. **Clarification.** If You believe a request is vague, overbroad, or unduly burdensome, contact Plaintiffs' counsel promptly, and before Your response is due, to seek clarification or a narrowing, so that the issue can be resolved without motion practice.

15. **Confidential information.** That information is confidential or commercially sensitive is not a ground for withholding it. Designate such information under any protective order entered in this action.

16. **Redactions.** Produce each document in its entirety. Do not redact information on the ground that it is irrelevant, nonresponsive, confidential, or commercially sensitive. Redact only information withheld under a claim of privilege, and identify each redaction in Your privilege log.

17. **Lost or destroyed documents.** If any responsive document has been lost, discarded, or destroyed, identify it, state the date and circumstances of its loss or destruction, and identify each person with knowledge of those circumstances.

18. **Independent requests.** Each request is to be construed independently. No request limits the scope of any other request.

19. **Duty to supplement.** These requests are continuing. You must supplement or correct Your response and production as required by Fed. R. Civ. P. 26(e).

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 1:** Each Power Agreement, complete with all schedules, statements of work, appendices, exhibits, and attachments, and each other document it incorporates by reference, including any document that states the engine specifications, emission limits, or operating or air-permitting requirements that VoltaGrid must meet at either Campus.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:** Your file copies of each TCEQ Submission for an Emission Unit or any other emission source at either Campus (including Registration Nos. 175523 and 175524); the spreadsheet file (such as an Excel file) in which each emission calculation

in those submissions was prepared, with its formulas intact; and any consultant's workpapers for each such calculation.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** The Specification Documents for each Generator model, and documents sufficient to show the Installation Dates of each Generator.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:** The Operating Records for each Generator.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:** For each Trailer-Mounted Unit, documents sufficient to Identify it and to show its location and Installation Dates; the agreement under which it was brought onto the Campus; and each TCEQ Submission and each communication with TCEQ concerning it.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:** The Monitoring Documents and Monitoring Data for the Generators.

**RESPONSE:**

Dated: November 5, 2026

Respectfully submitted,

/s/ Kenneth J. Rumelt
Kenneth J. Rumelt (admitted pro hac vice)
Environmental Integrity Project
888 17th St., NW, Suite 810
Washington, D.C. 20006
krumelt@environmentalintegrity.org
(202) 888-2707

Gabriel Clark-Leach (TX Bar No. 24069516)
Environmental Integrity Project
98 San Jacinto Blvd., Suite 400
Austin, Texas 78701
gclark-leach@environmentalintegrity.org
(202) 263-4440

*Attorneys for Plaintiffs Public Citizen and Sierra Club*

**CERTIFICATE OF DELIVERY**

I certify that on November 5, 2026, I delivered the foregoing to all counsel of record by electronic mail under Federal Rule of Civil Procedure 26(d)(2).

/s/ Kenneth J. Rumelt
Kenneth J. Rumelt