**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| PUBLIC CITIZEN and SIERRA CLUB, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| VANTAGE DATA CENTERS | § | No. 5:26-cv-06032-JKP-ESC |
| MANAGEMENT COMPANY, LLC, | § | |
| VANTAGE DATA CENTERS TX11, LLC, | § | |
| VANTAGE DATA CENTERS TX21, LLC, | § | |
| and VOLTAGRID LLC, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL A RULE 26(f) CONFERENCE (ECF NO. 36) AND RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER (ECF NO. 37)**

Defendants are powering their Rogers Road data center campus with a gas-fired powerplant consisting of nine trailer-mounted engine units that lack Clean Air Act permits and emissions controls. ECF No. 35 at 11; ECF No. 35-10 ¶¶ 34–35. Uncontrolled emissions from these trailer-mounted units form a plume that carries formaldehyde, a known carcinogen, and other harmful pollutants into adjacent neighborhoods where Plaintiffs' members breathe the pollution. https://tinyurl.com/pn8mht7t (video). These engines are not mentioned in the registration materials VoltaGrid submitted to TCEQ to authorize construction of the gas plant.

Defendants do not dispute any of these facts. ECF No. 37 at 4–5. Instead, they seek to further avoid public scrutiny and skirt the Clean Air Act with fringe arguments to keep their files secret: they haven't made an appearance in this case, they can run a gas-fired power plant without emissions controls if the engine units sit atop a trailer, and that any "threshold" issue they might raise in a motion to dismiss warrants a stay. ECF No. 37 at 2–6. None hold water.

The Rules are designed to ensure the "commencement of discovery is not delayed unduly" by encouraging the parties' discovery conference "take place as soon as practicable" after any defendant makes "any appearance." Fed. R. Civ. P. 26(f) advisory committee's note to 1993 amendment; W.D. Tex. Civ. R. CV-16(c). Plaintiffs have followed these instructions. Defendants ask the Court to stay discovery indefinitely while they press novel Constitutional theories and Clean Air Act interpretations that no court has accepted. Their goal is simple: delay.

Defendants bear the burden to show good cause for a protective order. *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). They have not met it. The Court should grant Plaintiffs' motion to compel, order Defendants to take part in a Rule 26(f) conference and deny Defendants' motion for a protective order so that discovery can begin and the case can move forward.

## I. DEFENDANTS HAVE NOT SHOWN GOOD CAUSE FOR A PROTECTIVE ORDER

Discovery stays based on a pending Rule 12(b)(6) motion are "very rare, and almost never wise." *YETI Coolers, LLC v. Magnum Solace, LLC*, No. 1:16-CV-663-RP, 2016 WL 10571903, at *1 (W.D. Tex. Oct. 19, 2016). If the Federal Rules contemplated staying discovery for a pending Rule 12(b)(6) motion, they "would contain a provision to that effect"; such a stay would be "directly at odds with the need for expeditious resolution of litigation." *Id.* (internal quotation marks and citation omitted).

A party seeking a protective order must make "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Terra*, 134 F.3d at 306 (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 26(c)(1). Defendants offer no declaration and no facts about burden. They identify nothing burdensome about a Rule 26(f) conference, about the fourteen document requests—which target core issues in this case, and several of which ask only for documents "sufficient to show" a fact—or about discovery in general. ECF Nos. 36-7, 36-8. Defendants' conclusory objections do not meet the standard.

In contrast, the harm is concrete and ongoing. The optical gas imaging video shows a plume of uncontrolled emissions from Defendants' trailer-mounted engines leaving Defendants' property and entering the surrounding neighborhood. ECF No. 35 at 11; ECF No. 35-16, Rep. at 7, 11–12; ECF No. 35-10 ¶¶ 34–35; https://tinyurl.com/pn8mht7t (video). Defendants respond that optical gas imaging "does not quantify concentrations." ECF No. 37 at 4. Plaintiffs never said it did. The rest of Dr. Suh's sentence explains that the observations "demonstrate the potential for exhaust emissions from the natural gas-fired power plants to be transported into surrounding communities." ECF No. 35-9 ¶ 91. While Defendants assert the preliminary injunction motion "will be decided on the record the parties are already developing," ECF No. 37 at 6, they hold

every record about these engines and other relevant documents that are not publicly available. Even TCEQ may be unaware of the trailer engines operating without pollution controls.

Plaintiffs surmise that without the use of controls on the trailer-mounted engines, each engine emits roughly 33 times the nitrogen oxides, 16 times the volatile organic compounds, and 21 times the formaldehyde that VoltaGrid represented to TCEQ for the "permanent" engines. ECF No. 35 at 18. Defendants are thus exposing their neighbors to far more formaldehyde and other harmful pollutants than they represented to TCEQ for the minor source authorization they claim. ECF No. 35 at 18; ECF No. 35-9 ¶ 26. Plaintiffs' members who live nearby include a 76-year-old with pulmonary fibrosis and a mother whose two children have been hospitalized for reactive airway disease, who has seen heat shimmer rising from the direction of the trailers since September. ECF No. 35 at 9–10. Every month of delay prolongs the harm to Plaintiffs' members while the evidence remains in Defendants' hands.

Delay is also unjustified because Defendants' forthcoming motion is unlikely to succeed. Courts weigh "the harm produced by the delay in discovery against the possibility the motion will be granted." ECF No. 37 at 5 n.1 (Defendants' citation to *Bickford v. Boerne Indep. Sch. Dist.*, No. 15-CV-1146, 2016 WL 1430063, at *1 (W.D. Tex. Apr. 8, 2016)). Both considerations favor Plaintiffs. Defendants' motion to dismiss will argue that Plaintiffs may not bring "this representative suit under [the Clean Air Act citizen suit provision]" and that the Act cannot "constitutionally be applied." ECF No. 37 at 6. No court has accepted these arguments. Most recently, the Northern District of Mississippi rejected both arguments in a Clean Air Act citizen suit over unpermitted gas-fired turbines powering a data center. *Nat'l Ass'n for the Advancement of Colored People v. X.AI Corp.*, No. 3:26-CV-74-DMB-JMV, 2026 WL 3270169 (N.D. Miss. Oct. 30, 2026) ("*NAACP*"). The court held that associations suing to protect their members' interests

sue "on [their] own behalf," and it was "not aware of any" case holding otherwise. *Id.* at *4, *5. It also held that the Clean Air Act citizen suit provision violates neither Article II nor the private nondelegation doctrine, noting that "[o]ther district courts to consider the issue have reached the same conclusion." *Id.* at *13–15. Defendants' motion is unlikely to succeed or "frame the case." ECF No. 37 at 4. No factor supports a protective order or a stay.

## II. THE TRAILER-MOUNTED ENGINES ARE RELEVANT AND DEFENDANTS' "MOBILE SOURCE" LABEL IS A DEFENSE THAT REQUIRES DISCOVERY.

Defendants do not deny that the trailer-mounted units at Rogers Road are VoltaGrid's, that they are operating, or that they lack emission controls. ECF No. 37 at 4–5. They identify no permit or registration authorizing them, and Plaintiffs have found none. Their only response is that they units are "temporary nonroad engines" under "a separate regulatory regime." *Id.* However, their assertion does not make the need for discovery any less urgent—mounting an engine on wheels does not make emissions safer and it does not categorically exempt their emissions from the requirements of New Source Review pursuant to the Clean Air Act.

Discovery reaches "any party's claim or defense," and Defendants' "mobile source" label is a defense. Fed. R. Civ. P. 26(b)(1). It also turns on facts only Defendants have. Even under Defendants' theory, an engine is not a nonroad engine if it "remains or will remain at a location for more than 12 consecutive months," and the time of any engine that "replaces an engine at a location and . . . is intended to perform the same or similar function" counts toward that period. 40 C.F.R. § 1068.30 (defining "nonroad engine," ¶ (2)(iii)). These trailer-mounted engines appear to be performing the exact function that the engines at the power plant, still under construction will perform: their purpose is to power the data center. When these trailers arrived, how long they will stay, what will replace them (*i.e.*, the permanent engines), and what they power are exactly what Plaintiffs' requests ask. ECF No. 36-7 (Request No. 5); ECF No. 36-8 (Request Nos. 4, 8).

Defendants call the engines "temporary" without answering any of those questions. Nor are the units "outside the scope" of this case. ECF No. 37 at 5. The *NAACP* court rejected a similar "mobile source" defense for trailer-mounted turbines serving a data center. 2026 WL 3270169 at *9, even though the state agency there had issued a letter accepting the turbines as "mobile" and "temporary," *id.* at *11. Defendants do not even offer that here.

## III. DEFENDANTS ARE SLOW WALKING THE RULE 26(F) PROCESS

Plaintiffs already explained why Defendants' reliance on the Rule 16's 1993 Committee Note is wrong. ECF No. 36 at 7–8. And Defendants do not dispute that under Rule 16(b)(2) the parties must confer by December 1 absent good cause, which makes their "appearance" claim nonsensical. ECF No. 36 at 8; ECF No. 37 at 4; Fed. R. Civ. P. 16(b)(2). Defendants have made an "appearance" under the Rules, ECF No. 36 at 3, 6–7, and their only "good cause" rests on a forthcoming motion to dismiss asking this Court to go where no court has gone before.

Last, Defendants' timing arguments confuse their own lack of transparency with Plaintiffs' urgency. ECF No. 37 at 4. Defendants concede that VoltaGrid's permit registration materials never disclosed that any engines would power a data center without emissions controls. ECF No. 35-15 at 8–9, 38; *see* ECF No. 37 at 4–5. Plaintiffs brought the evidence to the Court as soon as possible after expert review. ECF No. 35 at 18; ECF Nos. 35, 36. Defendants cannot fault Plaintiffs for moving slowly on critical facts Defendants never disclosed.[1]

## <u>CONCLUSION</u>

The Court should grant Plaintiffs' motion and deny Defendants' motion for a protective order.

---

[1] For a data-center power plant in Georgia, VoltaGrid disclosed five "temporary" engines in its state air permit, and the state counted their emissions toward the facility's limits and required their hours of operation to be monitored. ECF No. 35-17 at 2–5, 23–24.

Dated: November 12, 2026

Respectfully submitted,

/s/ *Kenneth J. Rumelt*

Kenneth J. Rumelt (VT Bar No. 4801)*
Environmental Integrity Project
888 17th St., NW, Suite 810
Washington, D.C. 20006
krumelt@environmentalintegrity.org
Phone: 202-888-2707

Gabriel Clark-Leach (TX Bar No. 24069516)
Environmental Integrity Project
98 San Jacinto Blvd., Suite 400
Austin, Texas 78701
gclark-leach@environmentalintegrity.org
Phone: 202-263-4440

*Attorneys for Plaintiffs*

* Admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on November 12, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

/s/ *Kenneth J. Rumelt*
Kenneth J. Rumelt