**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

PUBLIC CITIZEN and
SIERRA CLUB,

*Plaintiffs,*

v.

VANTAGE DATA CENTERS
MANAGEMENT COMPANY, LLC,
VANTAGE DATA CENTERS TX11, LLC,
VANTAGE DATA CENTERS TX21, LLC,
and VOLTAGRID LLC,

*Defendants.*

No. 5:26-cv-06032-JKP-ESC

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................3

A. Statutory and Regulatory Background ..........................................................................3

B. Factual Background ......................................................................................................5

ARGUMENT ........................................................................................................................6

I. The Organizational Plaintiffs Cannot Sue on Behalf of Their Members..................................7

II. The CAA's Citizen Suit Provision Violates Article II of the Constitution and the Private Nondelegation Doctrine...........................................................................................11

A. The Power to Prosecute Federal Public Offenses Belongs to the President Alone...........................................................................................................................11

B. The CAA's "Citizen-Enforcement" Provision Unconstitutionally Delegates Federal Law Enforcement Power to Private Persons—At Least as Applied Here...........................................................................................................................13

CONCLUSION....................................................................................................................20

Defendants Vantage Data Centers Management Company, LLC, Vantage Data Centers TX11, LLC, Vantage Data Centers TX21, LLC (collectively, "Vantage"), and Defendant VoltaGrid LLC ("VoltaGrid") (collectively with Vantage, "Defendants") jointly move to dismiss the Complaint of Plaintiffs Public Citizen and Sierra Club (together, "Organizational Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

This case involves challenges to state permits to construct minor sources of air pollution. The case was not brought by the Environmental Protection Agency ("EPA"), the federal agency entrusted with administering the Clean Air Act ("CAA"). It was not brought by the State of Texas or the Texas Commission on Environmental Quality ("TCEQ"), the agency that oversees the state permitting regime at issue. Nor was it brought by private citizens on their own behalf. Instead, the suit was brought by two advocacy groups, Public Citizen and Sierra Club, on behalf of their members. Those Organizational Plaintiffs' effort to take the reins of CAA enforcement fails as a matter of both statutory text and constitutional principle.

With respect to the statute, the CAA citizen suit provision on which the Organizational Plaintiffs rely says that a private plaintiff may sue "on his own behalf." 42 U.S.C. § 7604(a). An association can thus sue to "vindicate only its own interests as an organization, and not"—as the Organizational Plaintiffs attempt here—to advance "the interests of its individual members." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 104 n.6 (1998). The Organizational Plaintiffs thus lack a cause of action because their suit "seeks to protect their members' interests and the public." Dkt. 35 at 18.[1] They are not, as the CAA requires, suing "on [their] own behalf."

But even if the CAA were interpreted as granting the Organizational Plaintiffs a cause of

[1] For docket entries, Defendants cite to the page numbers shown in the ECF header.

action, the advocacy groups' self-described "citizen-enforcement action," Dkt. 1 ¶ 1, is unconstitutional. Under Article II of the Constitution, "the 'executive Power'—all of it—is 'vested in a President,' who must 'take Care that the Laws be faithfully executed.'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 203 (2020) (quoting U.S. Const. art. II). The CAA, however, authorizes "any person" to "enforce" the Act's myriad emissions and permitting requirements against "any" other person by obtaining sweeping injunctive relief and massive civil monetary penalties (over $120,000 per day per violation) payable to the U.S. Treasury. 42 U.S.C. § 7604(a), (d), (g). Citizen suit plaintiffs are "private attorney[s] general," *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 531 (5th Cir. 2008), that effectively "step into the government's [enforcement] shoes," *StarLink Logistics, Inc. v. ACC, LLC*, 101 F.4th 431, 447 (6th Cir. 2024).

CAA citizen suits therefore violate Article II and the private nondelegation doctrine—at least where, as here, the citizen enforcement plaintiffs are suing in a representative capacity on behalf of their members and thus have not suffered a direct injury and do not otherwise have a direct stake in the action. As the Supreme Court has explained, private citizens cannot "conduct[] civil litigation … for vindicating public rights." *Buckley v. Valeo*, 424 U.S. 1, 140 (1976) (per curiam). The power to "file[] civil suits on behalf of the United States," seeking "injunctions" and "civil penalties," "lies at the very core of executive authority." *Trump v. Slaughter*, 146 S. Ct. 2283, 2305 (2026). According to the Organizational Plaintiffs, however, the CAA delegates that quintessentially executive authority to them. And to make matters worse, precedent to date has concluded that the federal Executive lacks the authority to shield Defendants from the Organizational Plaintiffs' suit if the Executive does not believe that Defendants should be subject to any enforcement action at all.

Under Fifth Circuit precedent, the Organizational Plaintiffs' suit "plainly [entails] an

unsupervised delegation of executive power that the Constitution does not tolerate." *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 178 F.4th 224, 241 (5th Cir. 2026), *cert. pending*, Nos. 26-199, 26-201, 26-332, 26-335, 26-430. The Organizational Plaintiffs' attempt to act as "a self-appointed mini-EPA," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 209 (2000) (Scalia, J., dissenting), independent of meaningful Executive Branch oversight or control, is unconstitutional.

Because the Organizational Plaintiffs cannot state a claim upon which relief could be granted, this Court should dismiss this suit with prejudice under Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

### A. Statutory and Regulatory Background

Under the CAA, EPA establishes national ambient air quality standards ("NAAQS") to protect public health and welfare. *See* 42 U.S.C. §§ 7408–7409. Subject to EPA review and approval, states adopt State Implementation Plans ("SIPs") to implement, maintain, and enforce the NAAQS. *See id.* § 7410; *see also Ohio v. EPA*, 603 U.S. 279, 283 (2024). EPA-approved SIPs take on "the force and effect of federal law." *Sierra Club v. La. Dep't of Env't Quality* ("*LDEQ*"), 100 F.4th 555, 564 (5th Cir. 2024).

SIPs must include preconstruction permitting requirements for new or modified "major" stationary sources that meet emissions thresholds for certain pollutants. *See* 42 U.S.C. §§ 7410(a)(2)(C), 7475, 7503; 40 C.F.R. §§ 51.165–.166. Those requirements' stringency depends on whether the source is in an "attainment area" (an area meeting the NAAQS), where the CAA's Part C Prevention of Significant Deterioration provisions apply, or is in a "nonattainment area" (an area failing to meet the NAAQS), where the CAA's Part D Nonattainment New Source Review provisions apply. *See* 42 U.S.C. §§ 7470–7492, 7501–7515. States may also require permits for

minor sources that fall below the major New Source Review thresholds. *See id.* § 7410(a)(2)(C).

The regulations included in Texas's EPA-approved SIP are set forth in 40 C.F.R. § 52.2270. TCEQ administers Texas's SIP and ensures Texas's compliance with the NAAQS. *See* Tex. Health & Safety Code Ann. § 382.011.

While the CAA "contemplates very significant participation in air pollution control by state air pollution control agencies," *United States v. Ford Motor Co.*, 814 F.2d 1099, 1102 (6th Cir. 1987); *see also* 42 U.S.C. § 7410(a)(1), (2)(C) (SIPs must provide for state enforcement), "final authority" for ensuring CAA compliance "is vested in [EPA]," *Ford Motor*, 814 F.2d at 1102. Congress empowered EPA to enforce SIP requirements, including through administrative orders, administrative penalties, civil enforcement actions for civil penalties and injunctive relief, and criminal prosecutions. *See* 42 U.S.C. § 7413; *see also id.* § 7477 (authorizing EPA to enforce CAA's Prevention of Significant Deterioration program).

The CAA also includes a citizen suit provision. *See* 42 U.S.C. § 7604. As relevant here, that provision allows a person with Article III standing to "commence a civil action on his own behalf" to enforce "an emission standard or limitation" under the CAA, 42 U.S.C. § 7604(a)(1), or its New Source Review permit requirements for major stationary sources of air pollution, *id.* § 7604(a)(3). *See Laidlaw*, 528 U.S. at 180–88 (discussing Article III standing in Clean Water Act citizen suit).

The citizen suit provision allows private persons to seek injunctive relief and civil penalties of up to $124,426 per day for each violation. 42 U.S.C. § 7604(a), (d); *id.* § 7413(b); 40 C.F.R. § 19.4. Private persons who prevail in citizen suits receive no share of any civil-penalty award. Instead, penalties are generally deposited in the U.S. Treasury, although a court may order that up to $100,000 "be used in beneficial mitigation projects" that "enhance the public health or the

environment." 42 U.S.C. § 7604(g).

Before bringing an action to enforce an emission standard or limitation under § 7604(a)(1), a private plaintiff must provide 60 days' prior notice to the alleged violator, the responsible state officials, and EPA. *Id.* § 7604(b)(1)(A). If EPA or the state brings and diligently prosecutes an action to require compliance with the emission standard or limitation, the private plaintiff cannot bring suit under § 7604(a)(1). The pre-suit notice requirement and diligent-prosecution bar do not apply to citizen suits to enforce major-source permit requirements under § 7604(a)(3). *See id.* § 7604(b)(1) (provision applies only to actions "under subsection (a)(1)").

### B. Factual Background[2]

1. Vantage owns property in San Antonio, Texas, on which it is constructing and operating two data centers, which the Organizational Plaintiffs refer to as the "Omicron Drive campus" and the "Rogers Road campus." *See* Dkt. 1 ¶¶ 99, 101. Vantage obtained TCEQ minor-source "permits by rule" for air emissions from backup generators at both sites. *See id.* ¶¶ 172–181, 203–210.

2. Defendant VoltaGrid contracted with Vantage to provide power for the Omicron Drive and Rogers Road campuses. *See id.* ¶¶ 60–62. VoltaGrid obtained TCEQ minor-source "standard permits" for air emissions from its power generation facilities. *See id.* ¶¶ 184–200, 211–222.

3. Public Citizen and Sierra Club are national nonprofit advocacy organizations headquartered in Washington, D.C., and Oakland, California, respectively. *Id.* ¶¶ 79–80, 84–85.

4. The Organizational Plaintiffs challenge the validity of TCEQ's minor-source air

[2] Defendants for purposes of this motion to dismiss assume *arguendo* the truth of non-conclusory factual allegations in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Defendants' opposition to the Organizational Plaintiffs' Amended Motion for Preliminary Injunction contains a fuller discussion of the case's facts.

permits, claiming that TCEQ should have instead required major-source air permits under the CAA's Prevention of Significant Deterioration program, 42 U.S.C. §§ 7470–7492, or Nonattainment New Source Review program, 42 U.S.C. §§ 7501–7515. *See* Dkt. 1 ¶¶ 71, 233–234, 245–246, 266–267, 269–270, 289–292, 294–297, 299–300, 302–304, 306. The Organizational Plaintiffs further allege that Vantage violated the terms of its minor-source air permit for the Rogers Road campus by using backup generators as a primary power source. *See id.* ¶¶ 308–312.

5. The Complaint does not allege any facts indicating that Defendants' conduct directly injured their organizations. The Organizational Plaintiffs do not, for example, allege that they have offices in San Antonio that have been affected by emissions from the Omicron Drive and Rogers Road campuses. Instead, the Complaint makes clear that the Organizational Plaintiffs sue in a representative capacity on behalf of members who live in the vicinity of the data-center campuses. *See id.* ¶¶ 81–83, 86–91; *see also* Dkt. 35 at 13–19.

## ARGUMENT

This Court should dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) for two reasons. First, the Organizational Plaintiffs' attempt to bring this suit in a representative capacity on behalf of their members conflicts with the plain language of 42 U.S.C. § 7604(a), which states a citizen suit plaintiff may sue only "on his own behalf." Second, if § 7604(a) were interpreted as authorizing the Organizational Plaintiffs' suit, then its authorization of private enforcement actions by uninjured parties with no direct stake in the litigation violates the private nondelegation doctrine and Article II's exclusive vesting of the executive power in the President. Indeed, the serious constitutional concerns posed by the Organizational Plaintiffs' action militate strongly against construing § 7604(a) as authorizing this suit in the first place.

## I. The Organizational Plaintiffs Cannot Sue on Behalf of Their Members.

The CAA's citizen suit provision—the sole basis for the Organizational Plaintiffs' claims, Dkt. 1 ¶¶ 1, 70–71—does not create a cause of action for an association to sue in a representative capacity on behalf of its members. "[W]hether a legislatively conferred cause of action encompasses a particular plaintiff's claim" must be resolved by applying the "traditional tools of statutory interpretation." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 (2014).

The relevant provision states that "any person may commence a civil action *on his own behalf*." 42 U.S.C. § 7604(a) (emphasis added). The plain meaning of "on his own behalf" indicates that a plaintiff may sue only for his "[b]enefit," not for the benefit of another, as an agent or representative of a third party. *Behalf*, *Black's Law Dictionary* (4th ed. 1968); *see also Behalf*, *Black's Law Dictionary* (12th ed. 2024) (noting that the phrase "*on behalf of* means 'in the name of, on the part of, as the agent or representative of'"). The phrase "on his own behalf" in the CAA is thus best read to mean that an organization may sue "to vindicate only its own interests as an organization, and not the interests of its individual members."[3] *Steel Co.*, 523 U.S. at 104 n.6; *cf. United Food & Com. Workers Union, Local 1564 v. Albertson's, Inc.*, 207 F.3d 1193, 1200–01

[3] Although *Steel Co.* noted that "it is arguable" that citizen suit provisions containing "on his own behalf" language "permit[] [an association] to vindicate only its own interests as an organization, and not the interests of its individual members," 523 U.S. at 104 n.6, that issue does not appear to have been frequently litigated. Instead, in CAA litigation, parties often have not contested that § 7604(a) allows associations to bring citizen suits on behalf of their members and have instead focused on other issues, such as whether the organizational plaintiff satisfies the Article III test for associational standing. *See, e.g.*, *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 367 (5th Cir. 2024) (Jones, J., dissenting). As a result, no decision from the Fifth Circuit has directly grappled with the statutory-interpretation arguments presented here. *See NAACP v. X.AI Corp.*, No. 26-cv-74, 2026 WL 3270169, at *4–7 (N.D. Miss. Oct. 30, 2026) (holding that associations could bring a CAA citizen suit on behalf of their members, but recognizing that the issue is an open question that the Fifth Circuit has not addressed).

(10th Cir. 2000) (holding that unions cannot bring suit as representatives of their aggrieved members under the Fair Labor Standards Act, which authorizes suits "by any one or more employees for and in behalf of himself or themselves and other employees similarly situated" (quoting 29 U.S.C. § 216(b)).

The Organizational Plaintiffs here do not adequately allege that they are suffering injury to their own organizational interests sufficient to satisfy Article III.[4] Rather, the Organizational Plaintiffs are pursuing this "suit on behalf of [their] members," to redress their members' alleged injuries, relying solely on a theory of associational standing. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir. 2017) (distinguishing "derivative" associational standing theory on which Organizational Plaintiffs rely here from cases in which organizations allege harm to their own interests). In other words, the only harms that the Organizational Plaintiffs seek to remedy are alleged harms to their members—third parties not before the Court. *See* Dkt. 35 at 13–19 (claiming "associational standing" based on alleged injuries to the Organizational Plaintiffs' members); *see also Warth v. Seldin*, 422 U.S. 490, 511 (1975) (explaining that "representative" theory of Article III standing applies "[e]ven in the absence of injury to [the association] itself"). The Fifth Circuit has expressly distinguished between a suit brought by an association "on its own behalf" and one brought "on behalf of its members." *Friends of the Earth, Inc. v. Crown Cent. Petroleum Corp.*, 95 F.3d 358, 360 (5th Cir. 1996). Because the Organizational Plaintiffs' suit is the latter, it is exactly what Congress foreclosed when it limited citizen suits to those brought "on [a plaintiff's] own behalf."

[4] Although the Complaint includes an unelaborated assertion that "Defendants' violations have injured and continue to injure" both "Sierra Club and its members," Dkt. 1 ¶¶ 89–90, that conclusory allegation of injury to Sierra Club does not suffice to state a claim. *Iqbal*, 556 U.S. at 678.

If "on his own behalf" means anything, it must mean that a plaintiff may not sue as a representative of someone else—but that is exactly what the Organizational Plaintiffs attempt here. While legislative history indicates that Congress understood that the phrase "on his own behalf" meant that § 7604(a) does not authorize class actions, *see* S. Rep. No. 91-1196, at 38 (1970); *NAACP v. X.AI Corp.*, No. 3:26-cv-74, 2026 WL 3270169, at *6 (N.D. Miss. Oct. 30, 2026), Congress in § 7604(a) did not merely enact a targeted override of Federal Rule of Civil Procedure 23. *Cf.* 8 U.S.C. § 1252(e)(1)(B) (express prohibition of class actions in certain proceedings related to immigration). Instead, it adopted capacious language that also precludes representative suits based on associational-standing theories. Indeed, because "[a]ssociational standing … allows a party to effectively bring a class action without satisfying any of the ordinary requirements," there is no reason to think that Congress intended for § 7604(a) to preclude class actions but permit suits by associations acting exclusively in a representative capacity. *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 402 (2024) (Thomas, J., concurring). Section 7604(a)'s prohibition of suits based on associational standing follows *a fortiori* from its preclusion of class actions.

Consistent with the Northern District of Mississippi's recent, non-binding *X.AI* decision, which allowed associational plaintiffs to proceed with a CAA citizen suit on behalf of their members, the Organizational Plaintiffs here may argue that their "suit is in the interest of and benefit for [the Organizational Plaintiffs] as … organization[s]" because it furthers their missions of protecting the environment and human health. *X.AI*, 2026 WL 3270169, at *5. An ordinary English speaker, however, would not normally say that he is acting "on his own behalf" if he is in fact acting to promote such broad, generalized interests as "protect[ing] the health, environment, and consumer rights of Texans," Dkt. 1 ¶ 80, and "protect[ing] and restor[ing] the quality of the

natural and human environment," *id.* ¶ 85; *see also* Dkt. 35 at 18–19 (stating that the Organizational Plaintiffs "seek[] to protect their members' interests and the public from harmful air pollution"). By themselves, such "undifferentiated public interest[s]" cannot establish even Article III standing, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577 (1992), much less satisfy § 7604(a)'s more demanding requirement that a citizen suit plaintiff act "on his own behalf," 42 U.S.C. § 7604(a).

Even if § 7604(a) could conceivably be read as permitting the Organizational Plaintiffs to bring suit as representatives for their members' interests, the doctrine of constitutional avoidance requires rejecting that interpretation to avoid the serious constitutional question—addressed below—of whether the CAA's citizen suit provision violates Article II and the private nondelegation doctrine.[5] *See FCC v. Consumers' Rsch.*, 606 U.S. 656, 691 (2025) ("Statutes … should be read, if possible, to comport with the Constitution, not to contradict it."); *accord United States v. Hansen*, 599 U.S. 762, 781 (2023); *see also Hersh v. United States ex rel. Mukasey*, 553 F.3d 743, 753–61 (5th Cir. 2008) (applying doctrine of constitutional avoidance where statute, "if interpreted literally," would "raise serious constitutional problems"). As explained below, the constitutional concerns presented by citizen suits are especially pronounced in cases, like this one, where the plaintiffs lack direct injury and are instead suing in a representative capacity.

In sum, the phrase "on his own behalf" in § 7604(a) does not mean "on behalf of others." Because the Organizational Plaintiffs lack a cause of action to pursue a claim on behalf of their members, they have not stated, and cannot state, a claim upon which relief could be granted.

[5] *X.AI* did not address the constitutional-avoidance argument Defendants raise here. *See X.AI*, 2026 WL 3270169, at *4–7.

## II. The CAA's Citizen Suit Provision Violates Article II of the Constitution and the Private Nondelegation Doctrine.

Even if the Court interprets § 7604(a) as permitting representative suits, the Court should nonetheless dismiss under Rule 12(b)(6) because the Organizational Plaintiffs' suit violates Article II of the Constitution and the private nondelegation doctrine.

### A. The Power to Prosecute Federal Public Offenses Belongs to the President Alone.

Article II's Vesting Clause provides that "[t]he executive Power shall be vested in a President of the United States of America." U.S. Const. art. II, § 1, cl. 1. This means that "[t]he entire 'executive Power' belongs to the President alone." *Seila Law*, 591 U.S. at 213. A key part of that executive power is the duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. Although the President may rely upon subordinate officers, "[t]hese lesser officers must remain accountable to the President, whose authority they wield." *Seila Law*, 591 U.S. at 213; *accord Slaughter*, 146 S. Ct. at 2310. The Constitution's Framers sought to ensure a "chain of dependence" in which "the lowest officers, the middle grade, and the highest … depend, as they ought, on the President, and the President on the community." *Slaughter*, 146 S. Ct. at 2296 (quoting 1 Annals of Cong. 499 (1789) (statement of James Madison)). Congress may not by statute "deprive [the President] of the executive power vested [in him] by the Constitution." *Id.* at 2302 (citation modified).

The "executive Power," as understood in 1789 and today, includes the core law enforcement authority to prosecute all federal public offenses, whether civil or criminal. Blackstone recognized that the king is the "proper person to prosecute for all public offences and breaches of the peace." 1 William Blackstone, *Commentaries* *258–59. This principle continued after independence and ratification: "during the Washington administration, prominent officials across all three branches recognized the president's role as chief law enforcement executive."

Saikrishna Prakash, *The Essential Meaning of Executive Power*, 2003 U. Ill. L. Rev. 701, 800 (2003).

Accordingly, "[i]nvestigation and prosecution of crimes is a quintessentially executive function." *Trump v. United States*, 603 U.S. 593, 620 (2024) (citation omitted). Similarly, the authority to bring civil lawsuits to enforce federal statutes, without any requirement that the plaintiff establish that it has a direct interest in the action beyond ensuring compliance with the law, also falls within the "executive power" that Article II vests exclusively in the President. *See Sierra v. City of Hallandale Beach*, 996 F.3d 1110, 1134 (11th Cir. 2021) (Newsom, J., concurring) ("[A]t its core, the 'executive power' entailed the authority to bring legal actions on behalf of the community for remedies that accrued to the public generally."); *see also* Restatement (Second) of Torts § 821C cmt. a (1979) ("Redress of [a] wrong to the entire community is left to its duly appointed representatives."). "A lawsuit is the ultimate remedy for a breach of the law, and it is to the President … that the Constitution entrusts the responsibility to 'take Care that the Laws be faithfully executed.'" *Buckley*, 424 U.S. at 138 (quoting U.S. Const. art. II, § 3).

The Supreme Court has thus held that the power to "file[] civil suits on behalf of the United States," seeking "injunctions" and "civil penalties," "lies at the very core of executive authority." *Slaughter*, 146 S. Ct. at 2305. Delegating that authority to private parties not subject to the Executive Branch's control deprives the Executive of his prerogative to "decide how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." *United States v. Texas*, 599 U.S. 670, 678 (2023) (citation modified); *see also In re Aiken Cnty.*, 725 F.3d 255, 264 (D.C. Cir. 2013) (opinion of Kavanaugh, J.) (explaining that the "power to protect individual liberty" by calibrating the level of federal enforcement activity is "[o]ne of the greatest *unilateral* powers a President possesses under the Constitution, at least in the domestic sphere").

This is not to say that creation of any federal private right of action violates Article II. Congress has long authorized rights of action allowing private parties to sue others for damages and equitable remedies based on violations of their own private rights. But what Congress cannot do is vest federal law enforcement power—including the authority to obtain federal penalties payable to the U.S. Treasury—in private parties outside the Executive Branch's oversight and control that have not themselves suffered injury and do not otherwise have a direct stake in the action. The general authority to engage in "roving enforcement of statutes" is a "quintessentially Article II" power that cannot be delegated to private parties. *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 123 F.4th 309, 379 (5th Cir. 2024) (Jones, J., dissenting); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 429 (2021) ("A regime where Congress could freely authorize *unharmed* plaintiffs to sue defendants who violate federal law … would infringe on the Executive Branch's Article II authority."); *Horsemen's*, 178 F.4th at 239–40 (holding that delegation of federal enforcement authority to private entity was unconstitutional where the entity did not "function subordinately" to a federal agency (citation omitted)).

### B. The CAA's "Citizen-Enforcement" Provision Unconstitutionally Delegates Federal Law Enforcement Power to Private Persons—At Least as Applied Here.

The CAA vests law-enforcement power in private persons without regard to constitutional first principles. The Act authorizes "any person" to "commence a civil action on his own behalf" against "any" other person who is alleged to have violated any of numerous CAA provisions, including emissions regulations and major-source permitting requirements. 42 U.S.C. § 7604(a)(1), (a)(3), (f). This enforcement authority includes both the ability to seek expansive injunctive relief and "the power to seek daunting monetary penalties against private parties on behalf of the United States"—"a quintessentially executive power." *Seila Law*, 591 U.S. at 219; *accord Slaughter*, 146 S. Ct. at 2305; *see also* 42 U.S.C. § 7604(a), (g).

The Organizational Plaintiffs' self-described "citizen-enforcement action" under the CAA, Dkt. 1 ¶ 1, is not ordinary civil litigation. As explained above, *see supra* p. 8, because the Organizational Plaintiffs rely on a theory of associational standing, they are not suing to vindicate their own interests or obtain redress for injuries they have suffered as entities. *Cf., e.g.*, 15 U.S.C. § 15(a) (providing cause of action for "any person … injured in his business or property" by antitrust violations, and authorizing recovery of treble "damages by him sustained"). They also (1) are not suing in a representative capacity with deep historical roots, such as an executor or guardian, *see* Fed. R. Civ. P. 17(a)(1); *cf. TransUnion*, 594 U.S. at 428 n.1 (discussing the rise of citizen suit provisions in "the 20th century"); (2) cannot—unlike relators in False Claims Act *qui tam* actions—claim an assigned portion of any penalty award,[6] *compare* 31 U.S.C. § 3730(d) (providing for awards to *qui tam* relators), *with* 42 U.S.C. § 7604(g) (requiring civil penalties in CAA citizen suits to be deposited in U.S. Treasury or "used in beneficial mitigation projects"); and (3) are not state officials acting to enforce their own state laws or protect their citizens.[7] Instead, the Organizational Plaintiffs are suing as "private attorney[s] general," *Env't Conservation Org.*, 529 F.3d at 531, that have effectively "step[ped] into the government's [enforcement] shoes," *StarLink*, 101 F.4th at 447; *see also* Dkt. 1 ¶ 77, Prayer for Relief (seeking civil penalties

---

[6] Although the Court need not reach the question here, there are "substantial arguments" for reconsidering circuit precedent upholding the constitutionality of False Claims Act *qui tam* actions, even though *qui tam* relators—unlike the Organizational Plaintiffs here—have a direct financial stake in the action. *United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 133 F.4th 395, 410 (5th Cir. 2025) (Duncan, J., concurring) (quoting *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 449 (2023) (Thomas, J., dissenting)); *accord United States ex rel. Jackson v. United States*, No. 24-40564, 2026 WL 3454267, at *13–23 (5th Cir. Nov. 13, 2026) (Willett, J., & Elrod, C.J., concurring); *United States ex rel. Gentry v. Encompass Health Rehab. Hosp. of Pearland, L.L.C.*, 157 F.4th 758, 766 (5th Cir. 2025) (Ho, J., concurring).

[7] That Texas retains enforcement authority with respect to its SIP is unproblematic because the regulations incorporated into the SIP are creatures of state law. *See* Dkt. 1 ¶ 120; 40 C.F.R. § 52.2270. To be sure, EPA approval of a SIP *also* gives state rules "the force and effect of federal law," *LDEQ*, 100 F.4th at 564, but this does not mean that those rules cease to be state law.

to be paid to the U.S. Treasury and an injunction against Defendants' continued construction and operation of the facilities at issue).

Thus, to the extent that § 7604(a) authorizes the Organizational Plaintiffs to bring suit without establishing that their own interests are directly at stake in this case, *but see supra* pp. 7–10, it is unconstitutional.[8] For decades, members of the Supreme Court have noted that citizen-enforcement suits raise "[d]ifficult and fundamental questions" under "Article II of the Constitution." *Laidlaw*, 528 U.S. at 197 (Kennedy, J., concurring); *see also id.* at 209 (Scalia, J., joined by Thomas, J., dissenting); *Dep't of Transp. v. Ass'n of Am. R.Rs.*, 575 U.S. 43, 62 (2015) (Alito, J., concurring). That is because the CAA's citizen suit provision—and especially its provision for "civil penalties payable to the Federal Treasury"—"does not provide a mechanism for individual relief in any traditional sense," but instead "turns over to private citizens the function of enforcing the law." *Laidlaw*, 528 U.S. at 209 (Scalia, J., dissenting).

The constitutional concerns are particularly stark where, as here, the plaintiffs are "national association[s]." *Id.* Such organizations have "significant discretion in choosing enforcement targets." *Id.* Under the Organizational Plaintiffs' interpretation of the CAA and applicable case law, once they have identified a single injured member of their associations, they may proceed to seek potentially crippling civil penalties and injunctive relief "without meaningful public control." *Id.* Meanwhile, "[e]lected officials are entirely deprived of their discretion to decide that a given

[8] To obtain dismissal, Defendants need only show that § 7604 is unconstitutional as applied here—i.e., it is unconstitutional to the extent that it authorizes the Organizational Plaintiffs to bring suit based on an associational-standing theory, without showing they have directly suffered injury or otherwise have a direct stake in the action. Defendants reserve the right to argue that § 7604 is also unconstitutional in other applications or on its face, either in other suits or in later stages of this action. *See, e.g.*, *Mayor of City of Georgetown v. Alexandria Canal Co.*, 37 U.S. (12 Pet.) 91, 99 (1838) ("[I]n case of a public nuisance, where a bill is filed by a private person, asking for relief by way of prevention, the plaintiff cannot maintain a stand in a court of equity[,] unless he avers and proves some special injury.").

violation should not be the object of suit at all, or that the enforcement decision should be postponed." *Id.* at 210; *see also Env't Tex. Citizen Lobby*, 123 F.4th at 375 n.32 (Jones, J., dissenting) (noting citizen suits' "potential to usurp the Executive Branch's principal prosecutorial responsibility").

Under binding Fifth Circuit precedent regarding the "private nondelegation doctrine," such delegations of law-enforcement authority to private parties—including the authority to "sue[] violators for injunctions"—can pass constitutional muster only if the private party "functions subordinately to an agency with authority and surveillance over it." *Horsemen's*, 178 F.4th at 237, 241 (citation modified); *accord Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940). In other words, the private party must act only "as an aid" to the federal agency, which must "retain[] the discretion to approve, disapprove, or modify the private entity's enforcement actions." *Horsemen's*, 178 F.4th at 237 (citation modified); *accord Alpine Sec. Corp. v. Fin. Indus. Reg. Auth.*, 121 F.4th 1314, 1325 (D.C. Cir. 2024); *cf. Consumers' Rsch.*, 606 U.S. at 694 (rejecting private-nondelegation argument where federal agency was the "final authority" on the contested issue).

To date, courts have not read the CAA as granting the federal Executive the power to exercise "oversight and control," *Horsemen's*, 178 F.4th at 248, over citizen suits.[9] *Cf. EPA v. City of Green Forest*, 921 F.2d 1394, 1405 (8th Cir. 1990) (concluding that "EPA's decision *not* to commence an action" did not bar a Clean Water Act citizen suit). Therefore, under Fifth Circuit

[9] In the *X.AI* litigation, EPA has argued that it is entitled to intervene in a citizen suit under 42 U.S.C. § 7604(c)(2) and dismiss it without the plaintiff's consent. *See NAACP v. X.AI Corp.*, No. 26-cv-74, 2026 WL 3124447 (N.D. Miss. Oct. 19, 2026) (granting intervention but denying EPA's request to dismiss suit). If EPA moves to intervene and dismiss the Organizational Plaintiffs' suit here, Defendants reserve the right to support EPA's motion. *See* Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").

precedent, to the extent that the CAA authorizes the Organizational Plaintiffs to "levy fines[] and seek injunctions—all without the [Executive's] say-so"—that grant of power "is forbidden by the constitution." *Horsemen's*, 178 F.4th at 230.

The violation of the private nondelegation doctrine here is even starker than in *Horsemen's*. There, the Fifth Circuit invalidated Congress's delegation to a private entity of the authority to enforce rules for thoroughbred horseracing. *Id.* at 236–48. The Court did so even though the Federal Trade Commission ("FTC") could review *de novo* any sanctions imposed by the private regulatory authority. *Id.* at 239–41. The Court held that the FTC's "back-end review" authority did not cure the constitutional violation stemming from Congress's delegation of initially unsupervised authority to investigate, prosecute, adjudicate, and penalize. *Id.* at 240–41, 248.

Here, the CAA's citizen suit provision—at least as interpreted in case law to date—does not even empower the federal Executive to "come in at the tail-end of th[e] adversarial process and review the sanction." *Id.* at 240–41; *see also id.* at 245 n.20 (distinguishing False Claims Act *qui tam* suits because, in such suits, the United States can "take control of the litigation" and "dismiss the suit notwithstanding the [relator's] objections" (citation modified)). The citizen suit provision's unconstitutionality thus follows *a fortiori* from *Horsemen's*—at least where, as here, the plaintiff (like the private regulatory entity in *Horsemen's*) has not suffered a direct injury and does not otherwise have a direct stake in the litigation.[10]

This case resembles *Horsemen's* in a further respect: As an additional ground for its nondelegation decision, *Horsemen's* also emphasized that the private regulatory authority there

[10] If anything, the Organizational Plaintiffs' interest in this litigation is more remote than the enforcement-related interests of the private regulatory entity in *Horsemen's*, which is funded in part by fines it imposes. *See* 15 U.S.C. § 3052(f)(4). By contrast, any civil penalties that may be imposed in this action will not directly benefit the Organizational Plaintiffs. *See* 42 U.S.C. § 7604(g).

not only could impose sanctions itself (subject to potential FTC review), but also could bring suit in federal district court to obtain injunctive relief against violators, without pre- or post-suit review by the Executive Branch. *Id.* at 241. Under current case law, a similar issue exists if the federal Executive does not believe that a prospective citizen suit target should be subject to a CAA enforcement action in federal court. *Id. But see supra* note 9. The CAA's citizen suit provision thus "plainly" entails "an unsupervised delegation of executive power that the Constitution does not tolerate." *Horsemen's*, 178 F.4th at 241.

To be sure, citizen enforcers must provide EPA (and relevant state authorities) 60 days' advance notice of a citizen suit under § 7604(a)(1), and they cannot bring suit under that provision if EPA (or the state) "has commenced and is diligently prosecuting a civil action" regarding the alleged violation. 42 U.S.C. § 7604(b)(1). But as the Organizational Plaintiffs themselves emphasize, the notice requirement and diligent-prosecution bar apply only to claims under § 7604(a)(1), not § 7604(a)(3). Dkt. 35 at 19 & n.9. Except for the Organizational Plaintiffs' Claim 7, their claims here appear to rely primarily, if not exclusively, on the § 7604(a)(3) theory that Defendants failed to obtain major-source permits. *See* Dkt. 1 ¶¶ 71, 233–234, 245–246, 266–267, 269–270, 289–292, 294–297, 299–300, 302–304, 306; *see also Nucor Steel-Ark. v. Big River Steel, LLC*, 825 F.3d 444, 450 (8th Cir. 2016) (failing to obtain an allegedly required permit is a "one-time" event and thus does not involve a repeated or continuing violation, as required to state a claim under § 7604(a)(1)).

In any event, § 7604(b)(1)(B) allows EPA to "foreclose [a] citizen suit" only "by itself bringing suit." *Laidlaw*, 528 U.S. at 210 (Scalia, J., dissenting). That scheme, in which "public authorities [may] avoid private enforcement only by accepting private direction as to when enforcement should be undertaken," is "constitutionally bizarre." *Id.* It "entirely deprive[s]" the

federal Executive of its "discretion to decide that a given violation should not be the object of a suit at all, or that the enforcement decision should be postponed." *Id.* The diligent-prosecution bar thus does nothing to mitigate the citizen suit provision's infringement of the Executive's core Article II authority "to decide how to prioritize and how aggressively to pursue legal actions" for violations of federal law. *Texas*, 599 U.S. at 678 (citation modified). *Contra X.AI*, 2026 WL 3270169, at *14 (non-binding Northern District of Mississippi decision rejecting a constitutional challenge to the CAA's citizen suit provision based in part on the court's conclusion that it "does not allow private citizens to challenge or interfere with the EPA's discretion not to enforce").

Some district courts have upheld the constitutionality of CAA (and CAA-style) citizen suits. But many of those non-binding decisions predate the modern reinvigoration of the unitary Executive.[11] While the Northern District of Mississippi's *X.AI* decision recently rejected a constitutional challenge to the CAA's citizen suit provision, it did not consider the type of as-applied challenge that Defendants here raise. *See X.AI*, 2026 WL 3270169, at *13–15. After *Slaughter*, *Seila Law*, *Trump v. United States*, and *Horsemen's*, there can no longer be any question: the CAA's "citizen-enforcement" provisions, Dkt. 1 ¶ 1, violate Article II—at least as applied in cases, like this one, where the plaintiffs have not suffered a direct injury and do not

[11] *See, e.g.*, *N.C. Shellfish Growers Ass'n v. Holly Ridge Assocs., L.L.C.*, 200 F. Supp. 2d 551, 555–56 (E.D.N.C. 2001); *United States v. Am. Elec. Power Serv. Corp.*, 137 F. Supp. 2d 1060, 1065 (S.D. Ohio 2001); *Atl. States Legal Found., Inc. v. Buffalo Envelope*, 823 F. Supp. 1065, 1072–76 (W.D.N.Y. 1993); *Del. Valley Toxics Coal. v. Kurz-Hastings, Inc.*, 813 F. Supp. 1132, 1138 (E.D. Pa. 1993); *Nat. Res. Def. Council, Inc. v. Outboard Marine Corp.*, 692 F. Supp. 801, 815–17 (N.D. Ill. 1988); *Chesapeake Bay Found., Inc. v. Bethlehem Steel Corp.*, 652 F. Supp. 620, 623–26 (D. Md. 1987); *Student Pub. Int. Rsch. Grp. of N.J., Inc. v. Monsanto Co.*, 600 F. Supp. 1474, 1478 (D.N.J. 1985); *see also X.AI*, 2026 WL 3270169, at *15 n.19 (recognizing that several older district court cases rejecting constitutional challenges to citizen suit provisions erred by focusing only on whether "the legislative branch impermissibly intrud[ed] upon the executive branch's authority," without considering that "the private nondelegation doctrine prevents private parties, not just other branches of government, from exercising the federal government's executive power").

otherwise have a direct stake in the litigation. *Cf. X.AI*, 2026 WL 3270169, at *15 (rejecting challenge to the CAA citizen suit provision's constitutionality because, in the court's view, "[c]itizen suit plaintiffs bring actions on their own behalf … *to address their own injuries*" (emphasis added)).

The Framers rejected "the idea of plurality in the executive, under any modification whatever." The Federalist No. 70, at 364 (Hamilton) (Gideon ed. 2001). And for good reason. The buck stops with the President because this provides democratic accountability for the execution of the most fundamental aspects of a functioning democracy: "the protection of the community against foreign attacks," "the steady administration of the laws," "the protection of property," and "the security of liberty." *Seila Law*, 591 U.S. at 223–24 (quoting The Federalist No. 70, at 471 (Hamilton) (J. Cooke ed. 1961)). If a President does a poor job in carrying out these duties, the People know exactly whom to blame and can select someone else in the next election. Delegating to millions of private citizens the power to make their own law-enforcement decisions independent of the President does not have "even a fig leaf of constitutional justification." *Ass'n of Am. R.Rs.*, 575 U.S. at 62 (Alito, J., concurring).

This case illustrates exactly these points. Texas has an established process that regulates whether and how data center facilities can be built. Allowing the Organizational Plaintiffs to collaterally attack the permits that Defendants obtained under Texas law is not the "steady administration of the laws"; it invites inconsistent and unpredictable enforcement. The Organizational Plaintiffs' attempt to take control of CAA enforcement, even though they have incurred no injuries as organizations and have no other direct stake in the case, is unconstitutional.

## CONCLUSION

For the reasons above, the Court should dismiss the Organizational Plaintiffs' Complaint with prejudice.

Dated: November 16, 2026

Respectfully submitted,

*/s/ Christopher V. Popov*
Christopher V. Popov
Texas State Bar No. 24032960
VINSON & ELKINS L.L.P.
845 Texas Avenue, Suite 4700
Houston, TX 77002
Telephone: (713) 758-2636
Facsimile: (713) 615-5033
Email: cpopov@velaw.com

Patrick D. Traylor
Texas State Bar No. 791811
Joshua S. Johnson (admitted *pro hac vice*)
Texas State Bar No. 24070002
VINSON & ELKINS L.L.P.
2200 Pennsylvania Ave. NW
Suite 500 West
Washington, D.C. 20037
Telephone: (202) 639-6544
Facsimile: (202) 639-6604
Email: ptraylor@velaw.com
Email: joshjohnson@velaw.com

Liane Noble
Texas State Bar No. 24079059
VINSON & ELKINS L.L.P.
200 W. 6th Street, Suite 2500
Austin, TX 78701
Telephone: (512) 542-8425
Facsimile: (512) 236-3256
Email: lnoble@velaw.com

**ATTORNEYS FOR DEFENDANTS VANTAGE DATA CENTERS MANAGEMENT COMPANY, LLC, VANTAGE DATA CENTERS TX11, LLC, AND VANTAGE DATA CENTERS TX21, LLC**

**HUNTON ANDREWS KURTH LLP**

*/s/ David A. Terry*
David A. Terry
Texas State Bar No. 24079447
Leah B. Nommensen
Texas State Bar No. 24101573
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285
dterry@Hunton.com
leahnommensen@Hunton.com

Braden L. Dotson
Texas State Bar No. 24120808
1445 Ross Avenue, Suite 3700
Dallas, Texas 75202
Telephone: (214) 979-3000
Facsimile: (214) 880-0011
bdotson@hunton.com

Brent A. Rosser (admitted *pro hac vice*)
North Carolina State Bar No. 28781
101 S. Tryon Street, Suite 3500
Charlotte, North Carolina 28280
Telephone: (704) 378-4700
Facsimile: (704) 378-4890
brosser@hunton.com

Danica Milios
Texas State Bar No. 00791261
Ryan Clinton
Texas State Bar No. 24027934
500 West 5th Street
Suite 1350
Austin, TX 78701
Telephone: (512) 542-5068
dmilios@hunton.com
rclinton@hunton.com

*Counsel for Defendant VoltaGrid LLC*

## **CERTIFICATE OF CONFERENCE**

In compliance with the Court's Standing Order (Dkt. 11), on October 15, 2026, Defendants notified the Organizational Plaintiffs of the grounds for dismissal under Federal Rule of Civil Procedure 12(b)(6) and invited the Organizational Plaintiffs to meet and confer. Counsel for the parties conferred regarding Defendants' motion to dismiss on October 19, 2026. On October 22, 2026, the Organizational Plaintiffs advised the Court that they "do not intend to amend their Complaint in response to Defendants' notice of an anticipated motion to dismiss." Dkt. 29 at 1.

*<u>/s/ Liane Noble</u>*
Liane Noble

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 16, 2026, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email.

*/s/ Liane Noble*
Liane Noble